IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

_____
                                )
UNITED STATES OF AMERICA,        )
                                )
            Plaintiff,           )
                                )
vs.                             )      Case No. 2:22-cr-00210-TC
                                )
DANIEL DAVID EGLI,               )
                                )
            Defendant.           )
_____)

MOTION HEARING BEFORE THE HONORABLE

JUDGE TENA CAMPBELL

APRIL 25, 2024

Reported by Michelle B. Gonsalves, RPR, CRR, CBC, CSR
Orrin G. Hatch United States Courthouse
351 South West Temple, Room 7.431
Salt Lake City, Utah 84101
801.783.8657
michelle_gonsalves@utd.uscourts.gov

**APPEARANCES**

**FOR THE PLAINTIFF:**

Allison Hart Behrens
US ATTORNEY'S OFFICE
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
801.524.5682

Sirena Miller Wissler
US ATTORNEY'S OFFICE
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
801.524.5682


**FOR THE DEFENDANT:**

Daniel David Egli
Davis County Corrections
800 West State Street
Farmington, Utah 84025

**FOR THE DEFENDANT – STANDBY COUNSEL**

Robert Steele
FEDERAL PUBLIC DEFENDER DISTRICT OF UTAH
46 West Broadway, Suite 110
Salt Lake City, Utah 84101
801.524.4010

April 25, 2024        Salt Lake City, Utah        2:00 P.M.

P R O C E E D I N G S

\* \* \*

THE COURT:  Okay.  We're here in United States v. Daniel David Egli, who is here, representing himself but?  A stand by assistance of Mr. Steele.

For the United States -- for the United States, we have Ms. Behrens, Ms. Wissler.

And we are looking at motions in limine.  I've gone over these motions.  We're set for trial coming up May 6th, aren't we?

MS. BEHRENS:  Yes, Your Honor.

THE COURT:  Okay.  All right.  And I think United States, there are three motions in limine ahead of trial, and so I'm going to ask you to address them briefly, the United States; and if there's any response or opposition that you wish to offer, Mr. Egli, please do, either yourself or through Mr. Steele, okay?

DEFENDANT EGLI:  Yes, Your Honor.

THE COURT:  Go ahead.

MS. BEHRENS:  Thank you, Your Honor.

Your Honor, the United States has filed three motions in limine.  Two of them, quite honestly, were filed more as an abundance of caution because the Defendant is representing himself.  And so it was as much to allow the Court to rule on

them in front of him so that he knows what the limitations are. Because I do believe the law is fairly clear on the Government's first and second motions.

The first motion in limine that we filed, Your Honor, is to ask the Court to make a determination, if necessary, as to the admissibility of statements that the Defendant made out of court.

I do not believe that the Court necessarily needs to make such a ruling, because I do not believe any of these statements were made while the Defendant were in custody. But, again, as an abundance of caution, the Defendant did make several statements when the probation officer went to his house on February 27, 2021, and at that time the probation officer asked him several times whether or not he had any unauthorized devices, and the Defendant had different and varying answers to all of those, which I believe certainly could be argued in front of a jury that tend to lead toward guilt finding.

**THE COURT:** Do you believe that they should come in only if Mr. Egli testifies?

**MS. BEHRENS:** Not at all, Your Honor. They're admissible as statements against a party opponent and by the Defendant under both of those.

**THE COURT:** Right.

**MS. BEHRENS:** So, any statement he makes would come in with regard to that.

4

THE COURT:  And you're relying on Rule 414?

MS. BEHRENS:  Pardon me, Your Honor?

THE COURT:  What rule are you relying on?

MS. BEHRENS:  Your Honor, as set forth in our motion in limine, I'm relying on Rule -- Title 18 United States code 3501, which says we have an obligation to ask the Court to make that determination.

THE COURT:  Okay.

MS. BEHRENS:  The second motion in limine is to preclude the Defendant from making any statement it before the jury.  That's not something that should be said or mentioned to the jury to either in cite passion or pity, one way or the other.  That is an issue entirely within the purview of the Court.  There is not a similar case in the entire country, I do not believe, that says this is something that we're able to permit to the jury, either the Prosecution or the Defendant.

So we would move for the Court to preclude the Defendant from making any such representations to the jury during his testimony, if, in fact, he testifies, or in reference on any cross-examination that he may --

THE COURT:  All right.

MS. BEHRENS:  Finally, Your Honor, the third motion in limine is requesting the Court to permit the Government to admit in its case in chief the Defendant's two prior convictions.  He was convicted in 2004 of child pornography.

5

He was convicted in 2010.  I believe you were the presiding judge in both of those.

THE COURT:  That's where you're asking just you certify the documents; right?

MS. BEHRENS:  That is correct.  That is correct, Your Honor.  And this is -- I believe under 414, Your Honor, the law is very clear that when you do the weighing, both for the probative value and the prejudicial issues, it almost consistently weighs in favor of the admissibility in this case. Without even taking in consideration there would be a limiting instruction.

I anticipate Mr. Egli, based upon conversations that we've had in leading up to this, that he will testify at trial; and if he does, we can use these to cross-examine him.  But in this case, we're asking for the ability to admit them in our case in chief.

I'm very aware, and I would bring -- it's not necessarily relative to the admissibility issue on these convictions, but I'm aware that you, Your Honor, are the judge on the other cases, and I think it would be only fair to sanitize your name from those as well, so that the jury doesn't have an impression that you may be inclined one way or the other with the Defendant.

THE COURT:  Right.

MS. BEHRENS:  So, we're aware of that, and I will be

very careful with that, and make sure we all are looking at this convictions -- certified convictions before we admit them.

**THE COURT:** Yes.

**MS. BEHRENS:** I think I set out in quite a lengthy detail why I think they're admissibility at this time.

**THE COURT:** Right.

**MS. BEHRENS:** And I would request the Court to grant that motion.

**THE COURT:** Thank you.

**MS. BEHRENS:** Thank you, Your Honor.

**THE COURT:** Mr. Egli, do you want to respond?

**DEFENDANT EGLI:** Please, Your Honor.

**THE COURT:** Do you want Mr. Steele to respond? How do you feel about this?

Yes, ma'am.

**MS. BEHRENS:** Your Honor, I actually would like to lodge an objection about Mr. Steele responding, because he is standby counsel, and I'm very concerned we're going to cross over into advisory counsel, which is a different thing if Mr. Steele participates, unless Mr. Egli changes his mind on representation.

**THE COURT:** Right. Well, he can -- certainly, Mr. Steele can be active if Mr. Egli goes back and asks him some help.

**MS. BEHRENS:** Okay. Thank you, Your Honor.

7

**THE COURT:**  Do you agree with that, Counsel?

**MS. BEHRENS:**  Your Honor, I'm concerned about that, because I think that then makes Mr. Steele advisory counsel, which is a different position than standby counsel.  And I think if that's going to be the case, we should probably have some sort of hearing to that degree, but that's my take on it.

**THE COURT:**  What's your take on it, Mr. Steele?

**MR. STEELE:**  Your Honor, we have a number of these cases right now.  We talked about it within the office.  I think I remain out of this unless Mr. Egli has a question that goes to what's happening right here right now.

**THE COURT:**  Right here right now.

**MR. STEELE:**  To support him as a, you know, pro se, that he doesn't have all the information he needs.  But I'm not going to initiate anything or suggest strategies.  He has to ask me questions, and they have to be related to what's right in front of the Court.

**THE COURT:**  Do you under that, Mr. Egli?

**DEFENDANT EGLI:**  I do.

**THE COURT:**  Okay.  Please go ahead with your response.

**DEFENDANT EGLI:**  Okay.  Your Honor, as a pro se defendant, obviously, I am not trained in law, and so I would ask for the most simple construction on what I say.

I find that it -- my rights to a due process are

8

being violated by even having this.  I am aware that this Court filed a response to my request for a surreply?

**THE COURT:**  Right.

**DEFENDANT EGLI:**  In that response, the Court said that I've had until -- I've had from August 23rd, but that is not correct, Your Honor.  Because we're not talking about the initial motions in limine.

I specifically requested to file a sur-response to the Government's response, which I did not receive until about April 12th, just literally a few days ago.

It's concerning the fact that I received it at night, that makes it 11, 12 days since I received it.  That is hardly enough time for someone who is not trained in law to research things properly, and to draw a proper response.

But I am entitled to do so because, as I stated in my motion, the Government introduced information that I was not aware of.

**THE COURT:**  All right.  Do you think you can handle this orally?

**DEFENDANT EGLI:**  Pardon?

**THE COURT:**  Can you do it now?  I'll give you leave to argue anything you wish --

**DEFENDANT EGLI:**  No, Your Honor, I do not believe I can do it right now.  I am very limited in my ability to do legal research.  I've been trying to do so, but as mentioned in

9

my brief, I'm also having problems with the jail because the jail refuses to recognize me as pro se.  So they will not allow any legal materials to be mailed in whatsoever.

THE COURT:  What do you have to show to the jail to receive the legal materials?

DEFENDANT EGLI:  Your Honor, I've been asking that for the very -- almost two months now.  If you want to hear it, I have a complete timeline of everything that I've said to the jail, or we can skip it.

THE COURT:  Let's skip it.  But you can give me the gist of it, if you want.

DEFENDANT EGLI:  Okay.  I have asked because my parents tried to bring in something for me to sign and mail out.  And they were told that this has to come from his attorney.  And my father said, "Well, he is the attorney.  He's pro se."

The judge -- not the judge, excuse me, the receptionist at the jail supposedly looked at the records and said, "Well, he's not shown as pro se by us."

THE COURT:  Hmm.

DEFENDANT EGLI:  So, when my father told me that, I sent in requests saying what do I need to do to get this fixed?

THE COURT:  Uh-huh.

DEFENDANT EGLI:  That request sat for about a week without it being answered.  Finally, I cancelled that one and

turned it into a grievance.

**THE COURT:** Uh-huh.

**DEFENDANT EGLI:** And then I sent in another grievance a week later. Finally, someone responded that the U.S. Marshals have been contacted, and they informed the jail that I was not pro se on this case, and so, therefore, was not entitled to pro se rights such as receiving legal materials.

I responded back, saying, "I don't know how that could have happened because I am pro se. I grant you I have stand-by counsel."

**THE COURT:** Right.

**DEFENDANT EGLI:** "But if you contact Vanessa Ramos," which is what I said in my request, "she will tell you that although she was present, she was there as standby counsel. She's not officially representing me, and she made no statements in my defense."

**THE COURT:** Right.

**DEFENDANT EGLI:** And so I would just ask that I be granted pro se status.

Just before I left the jail today, I got a response back that says, "I will look into this, and I will contact U.S. Marshals, but right now I'm not granting anything."

**THE COURT:** Who said that?

**DEFENDANT EGLI:** Sergeant Hutchinson, A. Hutchinson.

**THE COURT:** She's the jail officer?

11

**DEFENDANT EGLI:**  She's the jail officer, yes.

**THE COURT:**  Okay.  So you're asking, really, you want more time to review the materials.  And if I direct the marshals, and I've always found them to be quite agreeable, in fact, bending over backwards to assist people, you want more time to review the materials, and then have another hearing, is that basically what I'm hearing, what you're saying, sir?

**DEFENDANT EGLI:**  Pretty much.

What I would like, Your Honor.

**THE COURT:**  Yes, sir.

**DEFENDANT EGLI:**  Is the opportunity to review everything, to review case materials, to review precedents, and then to file the sur-response, which is my right, because as I stated in my motion, the Government introduced information that I was not aware of.

**THE COURT:**  Okay.

**DEFENDANT EGLI:**  And so once I have the sur-response in, then, obviously, we would have a hearing about everything including my sur-response.

**THE COURT:**  Okay.  All right.

Ms. Behrens, any thoughts on this, ma'am?

**MS. BEHRENS:**  Any thoughts on whether we should have another hearing, Your Honor?

**THE COURT:**  Whether I should continue this hearing to a later date to allow Mr. Egli time to review the materials, to

make sure that the jail understands that he is pro se, and that any legal counsel he had was simply standby.

MS. BEHRENS:  Well, Your Honor, I'm torn with that question.

THE COURT:  Okay.  All right.

MS. BEHRENS:  First, I would say, obviously, if we continue this hearing, then I don't see how we can hold the May 6th trial date.

THE COURT:  I think you're absolutely correct.

MS. BEHRENS:  I would disagree with what Mr. Egli said, that we introduced new information in our reply brief. That was not the case, and there's just nothing he can point to that he's not aware of.

But setting that aside, as I expressed to the Court before, I am troubled that Mr. Egli is representing himself. He's facing a substantial amount of time --

THE COURT:  Right.

MS. BEHRENS:  -- once he's convicted.  And I do not feel comfortable doing anything -- I mean, I know we have to draw lines, but I do feel uncomfortable also convicting someone and having him sentenced to what is likely going to be 15 to 18 years under the guidelines without him feeling that he has been able to have the opportunity to fully represent himself.

The problem with that, though, Your Honor, is that I don't see an end in sight.  Even if we correct these concerns

with the sheriff or the jail, and make sure that everyone knows that he's pro se -- every time I've gone to visit him, I have let everyone know that he's pro se and that's why he needs to have athletes documents.  Even if that's gets corrected, though, I don't know when the end -- when it will ever be long enough.  I guess that's my concern.

THE COURT:  It will be long enough to have the hearing and then the trial; is that correct?

MS. BEHRENS:  Pardon me, Your Honor?

THE COURT:  You are concerned about the length of time that we'll have to continue this to allow Mr. Egli time to review and, if he wishes, although I will have to tell you that the reason I denied the surreply request was I didn't think anything was new.  But Mr. Egli, obviously, feels different.  And once we get the surreply, set it down for hearing, and then a trial.  What you're saying is you don't know when that end date would be, the trial date, am I correct?

MS. BEHRENS:  I guess what I'm saying, Your Honor, is that let's say, hypothetically, we all say, "Okay, let's continue this until what's realistic."  I think he mentioned June 24th as a time to file a reply.

THE COURT:  Which I thought was quite long.

MS. BEHRENS:  And let's say we even say August just for these discussions.

THE COURT:  For the reply?

**MS. BEHRENS:**  For the trial, Your Honor.

**THE COURT:**  For the trial.

**MS. BEHRENS:**  We bump the trial.  The problem I'm having is I don't see us being ready to go to trial in August because I think Mr. Egli will still -- there's nothing to guarantee we can have a firm trial date because of all of these issues.  So when do we say -- I mean, if you recall, Your Honor, the last time we had a hearing, it was, "This date is firm.  We're not going to continue it."

**THE COURT:**  Right.

**MS. BEHRENS:**  If we continue it, which, again, I'm okay with a continuance for a period of time, but we may well be back here again because Mr. Egli may again have problems with doing all the research he feels he needs to do, and those types of things.

**THE COURT:**  I understand.  And those are valid points.

Mr. Egli, now that you've had a chance to assess what you wish to do; and recognizing, as you say you're not a lawyer, and you need time, are you still convinced that you are able to represent yourself?

**DEFENDANT EGLI:**  I am, Your Honor.

**THE COURT:**  Okay.  And then once you do that, how long to write your surreply?

**DEFENDANT EGLI:**  That is a difficult question just

because up until now, as I stated, I've been having a hard time getting anything in.  We do have tablets that help some, but, unfortunately, the battery life only lasts a few hours, and it takes all day to charge.  So I can do research for a couple of hours, and then I have to put it on the charger and leave it for six hours before I can take it off again.  That's my only legal resource right now, because the jail has been refusing to recognize me as pro se, and I can't get any -- any legal materials mailed in.  If I have papers mailed in, the jail will automatically reject it.

**THE COURT:**  But if I were to issue an order directing the jail to recognize you as pro se?

**DEFENDANT EGLI:**  That is precisely why I asked for the June 24th, Your Honor.  I realize 60 days might be a little long, but I felt it would be best to get the time for everybody to be on the same page in the jail, because I'm sure we've all had instances where we can see in our organization the left hand isn't talking to the right hand.

I mean no disrespect to the jail, but I do have some rights that I feel are not being met, and so I want to have the 60 days so that, (A), I can make sure that everybody in the jail is on the same page and knows I'm pro se, and it's okay to receive legal materials.  Then I can do more research, and I can request those legal materials, and then file my response.

**THE COURT:**  And you think that given those steps that

you must take, you could have the response by June 24th.

**DEFENDANT EGLI:**  I think that is a fair estimate, Your Honor.

**THE COURT:**  Okay.  And then after I receive your materials, you think there's anything more that the Government will need to do?

**MS. BEHRENS:**  Not -- with respect to these motions in limb my, Your Honor?

**THE COURT:**  Yes, ma'am.

**MS. BEHRENS:**  Absolutely not.

**THE COURT:**  Okay.  Then I'll tell you what I'll do: I will give you -- I will dictate a very brief order just informing the jail that you are pro se, and that you should receive all legal materials.  I will strike the May 6th trial date.  As soon as I review all of the briefing, I will set a trial date.  All right.

Bearing in mind that you have other trials, am I correct, ma'am?

**MS. BEHRENS:**  I do have some, Your Honor, but we can work with whatever the Court desires to do.

**THE COURT:**  Okay.  That's about the best I can do.

**DEFENDANT EGLI:**  Your Honor, the only thing I would ask then.

**THE COURT:**  Yes.

**DEFENDANT EGLI:**  In your order, would you

specifically specify that I am allowed to receive legal materials in the mail and through family visits.

THE COURT:  I don't know.

Do the jail rules allow that, if a person is pro se? I'm not familiar with that.

THE MARSHAL:  I never heard of that, ma'am, but I can ask.

THE COURT:  Okay.  I will request, but the jail doesn't follow my requests all the time.

DEFENDANT EGLI:  I understand.  I just want to get it on file that you have requested this.

THE COURT:  I will.

Yes, ma'am.

MS. BEHRENS:  I guess I'm curious about receiving legal mail, when he's representing himself.  From who is he receiving --

DEFENDANT EGLI:  It's not receiving legal mail.

MS. BEHRENS:  That's what I thought you said.

DEFENDANT EGLI:  No.  It's receiving legal information with which I can use to file my responses.

THE COURT:  Right.  He will receive --

Are you talking about, like, cases, etc.

DEFENDANT EGLI:  Case law, citations, things of that nature.

THE COURT:  Right.  So that -- legal mail is not

accurate.

**DEFENDANT EGLI:**  If I said "legal mail," then that is my bad, and I apologize.

**THE COURT:**  Well, that is just materials such as case law, law review articles, other briefs, that type of stuff, all right?

And if you would tell -- what's the best way to get the info to Davis County Jail?

**THE MARSHAL:**  It's an email our supervisor send, ma'am.

**THE COURT:**  Pardon me?

**THE MARSHAL:**  It's an email our supervisor can send over to the proper authorities at Davis County.

**THE COURT:**  All right.  And if your supervisor wants to come see me, please tell him I would look forward to any such visit.

**THE MARSHAL:**  Yes, ma'am.

**THE COURT:**  Anything else I need to do?

**MS. BEHRENS:**  Your Honor, just for clarity.  I believe the Court has said Mr. Egli can have until June 24th --

**THE COURT:**  Yes.

**MS. BEHRENS:**  -- in which to file a response?

Will the Court be setting a hearing, then?

**THE COURT:**  Yes.

**MS. BEHRENS:**  And so we'll get notice of when that

**19**

hearing is afterwards?

**THE COURT:**  Right.  Ms. Ford is not one to miss hearings, but she will -- not miss it, but make sure that everyone has it.

Including you, Mr. Egli, and the United States.

**DEFENDANT EGLI:**  That is acceptable, Your Honor.

**THE COURT:**  Anything else I need to do?

**MS. BEHRENS:**  Just so we're clear, the May 6th trial is now off the docket for good.

**THE COURT:**  Right.

**MS. BEHRENS:**  Thank you, Your Honor.

**DEFENDANT EGLI:**  Okay.

**THE COURT:**  And no new date has been set.

**MS. BEHRENS:**  Correct.

**THE COURT:**  But we will do so when the briefing is complete.  Okay.

Anything else now that I need to clarify or to do at all?

**MS. BEHRENS:**  Not that I'm aware of, Your Honor, on behalf of the Government.  Thank you.

**THE COURT:**  Mr. Egli, anything you need?

**DEFENDANT EGLI:**  As far as I'm aware, Your Honor, I'm okay for the moment.

**THE COURT:**  Marshals, anything you need.

**THE MARSHAL:**  No, ma'am.

**THE COURT:**  We'll be in recess.

(Recess taken by the Court at 2:27 p.m.)

C E R T I F I C A T E

STATE OF UTAH        )
                     )
                     )   ss.
                     )
COUNTY OF SALT LAKE  )


        This is to certify that the proceedings in the

foregoing matter were reported by me, Michelle Gonsalves, RPR,

CRR, CBC, CSR, in stenotype and thereafter transcribed into

written form;

        That said proceedings were taken at the time and

place herein named;

        I further certify that I am not of kin or otherwise

associated with any of the parties of said cause of action and

that I am not interested in the event thereof.

        In witness whereof I have subscribed my name this 3rd

day of July 2024.


_____
Michelle Gonsalves, RPR, CRR, CBC, CSR