IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>DANIEL DAVID EGLI,<br><br>　　　　Defendant. | **ORDER AND MEMORANDUM DECISION AFFIRMING ADMISSIBILITY OF CERTAIN STATEMENTS AT TRIAL**<br><br>Case No. 2:22-cr-00210-TC<br><br>Judge Tena Campbell |

　　　　Defendant Daniel David Egli is charged with possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  On August 9, 2023, the United States filed a motion in limine pursuant to 18 U.S.C. § 3501 asking the court to determine the admissibility of certain statements, which the government characterizes as an admission of guilt, made by Mr. Egli to U.S. Probation Officers during a routine home visit on February 27, 2021.  (See ECF No. 35 at 1.)  Mr. Egli disputes the voluntariness of his statements, arguing that he was subject to improper custodial interrogation in violation of his Fifth Amendment rights.  The court granted the government's motion for a hearing to determine the admissibility of these statements and held that hearing outside the presence of the jury on October 29, 2024, on the second day of a jury trial that began on October 28, 2024.  During that hearing, the court heard testimony from Charles Brock, one of the Probation Officers who conducted the February 27, 2024 home visit.  The court issued an oral decision outside the presence of the jury, holding that Mr. Egli's statements to his Probation Officer were made voluntarily and were therefore admissible at trial.

1

(ECF No. 101.)[1]  This written Decision and Order memorializes and provides further support for that finding.

**BACKGROUND**

After his June 2020 release from prison for a prior violation of 18 U.S.C. § 2252A(a)(5)(B), Mr. Egli moved in with his mother and father in their home in West Jordan, Utah.[2]  The conditions of Mr. Egli's supervised release included, among other requirements, a lifetime ban on the use of the internet or any devices that could connect to the internet as well as obligations that he meet regularly with his Probation Officer, "allow the probation officer to visit [him] at [his] home," "answer truthfully the questions asked by [his] probation officer," permit his probation officer to search his home or person "upon reasonable suspicion of contraband or evidence of a violation of a condition of release," and disclose any email accounts and devices for the storage and backup of digital media files.[3]  (See Conditions of Release dated Sept. 24, 2019, ECF No. 54 in Case No. 2:10-cr-00333-TC.)

On February 27, 2021, two Probation Officers conducted a routine home visit with Mr. Egli.  They met in the basement, where Mr. Egli's bedroom was located, as well as in the home's family room.  During this meeting, the Probation Officers noticed a flash drive located in plain sight in Mr. Egli's bedroom.  When asked what it contained, Mr. Egli told Mr. Brock that the

---

[1] Mr. Egli separately argued in briefing that his statements must be suppressed because the government allegedly withheld exculpatory evidence in violation Brady v. Maryland, 373 U.S. 83 (1963).  The court finds Mr. Egli's Brady argument is now moot, given that Mr. Egli conceded at a hearing on October 23, 2024, that he had received all the government's discovery. (ECF No. 95.)

[2] The following background facts summarize testimony elicited from United States Probation Officer Charles Brock at the hearing on October 29, 2024.

[3] See United States v. Egli, 13 F. 4th 1139, 1146 (10th Cir. 2021) (upholding, after Mr. Egli's appeal, a lifetime internet ban as one of Mr. Egli's conditions of supervised release).

flash drive contained music files. Because that digital file storage device had never been disclosed to probation—and such nondisclosure was a violation of Mr. Egli's special conditions of supervised release (id.)—the two Probation Officers began to search Mr. Egli's room and home. They next found a USB device connected to an external hard drive, which Mr. Egli told them belonged to his mother but admitted to using. The Probation Officers asked whether Mr. Egli had any other unauthorized devices, which Mr. Egli denied. The Probation Officers continued their search and found a laptop connected to the internet, which Mr. Egli said belonged to his father,[4] and an internet-connected smart phone wedged behind Mr. Egli's dresser. Mr. Egli told the Probation Officers that he had forgotten that he purchased the phone several months prior and admitted that he had connected to his neighbor's wireless internet and used the phone to access Whatsapp. At some point during the home visit, Mr. Egli told the Probation Officers that they were likely to find pornographic materials featuring adults on his device, even though Mr. Egli's supervised release terms banned him from using the internet and viewing pornographic materials in any form.[5] Mr. Egli made no statements related to the possession of child pornography at that time.

---

[4] At trial, Mr. Egli testified that he was setting up his father's laptop at his father's request to help him with architectural computer-aided drawing (CAD). Mr. Egli testified that he also used the laptop to search for, view, and download adult pornography. The court includes this information to provide context for Mr. Egli's version of events, although Mr. Egli testified after the court ruled on the admissibility of his statements and the court therefore did not consider this information when making its ruling.

[5] In his trial testimony (again, provided after the court's ruling), Mr. Egli denied informing his Probation Officer that there were adult pornographic materials on his devices. The court finds this dispute largely immaterial. Before the court issued its oral ruling that these statements were voluntary and therefore admissible, the parties agreed to give opening statements to the jury. In his opening statement, Mr. Egli admitted that he had used unauthorized devices to watch adult pornographic materials in violation of his supervised release conditions.

During this home visit, Mr. Egli was not restrained in any way by handcuffs or other means—he was free to walk about the home, eat, use the bathroom, or leave. Although the Probation Officers were armed, their firearms were concealed at all times during this meeting. Neither Probation Officer told Mr. Egli that he was required to answer their questions that day, nor did they threaten to revoke his parole. After the Probation Officers concluded their visit and left Mr. Egli's parents' home, Mr. Egli emailed his Probation Officer and admitted, unprompted, that he had an unauthorized internet connection through which he was accessing pornographic websites. (ECF No. 35 at 1–2.) Mr. Egli was not arrested until May 17, 2021, three months after the home visit.

## LEGAL STANDARD

The Fifth Amendment to the United States Constitution protects individuals from self-incrimination through coerced confessions. See U.S. Const. Amend. V ("No person shall be … compelled in any criminal case to be a witness against himself."). To protect criminal defendants' Fifth Amendment rights, courts have adopted what is referred to as the Miranda doctrine. See Miranda v. Arizona, 384 U.S. 436, 478 (1966). Under Miranda, criminal suspects must be provided notice of their right to remain silent and to counsel, among other rights, "at the moment [a] suspect is 'in custody' and the questioning meets the legal definition of 'interrogation.'" United States v. Chee, 514 F.3d 1106, 1112 (10th Cir. 2008) (quoting United States v. Perdue, 8 F.3d 1455, 1463 (10th Cir. 1993)); see also United States v. Patane, 542 U.S. 630, 645 (2004) (explaining the "inherently coercive character of custodial interrogation and the inherently difficult exercise of assessing the voluntariness of any confession resulting from it," and why those circumstances have required the Court to develop a jurisprudence on Miranda warnings). In other words, even though a defendant's statements may constitute an otherwise

4

admissible confession of guilt, defendants in custodial interrogation settings have certain rights that must be protected despite the ultimate effect on the government's ability to present its best case. See e.g., United States v. Rambo, 365 F.3d 906, 911 (10th Cir. 2004) (statements obtained in contravention of Miranda are inadmissible in the government's case-in-chief and must be suppressed).

"In any criminal prosecution brought by the United States …, a confession … shall be admissible in evidence if it is voluntarily given." 18 U.S.C. § 3501(a). In other words, "the Fifth Amendment does not bar the admission of volunteered statements which are freely given. If a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible" regardless of the government's failure to provide defendants or suspects with Miranda warnings. United States v. Muniz, 1 F.3d 1018, 1022 (10th Cir. 1993) (citing Miranda, 384 U.S. at 478); see also United States v. Guillen, 995 F.3d 1095, 1109 (10th Cir. 2021) ("Miranda warnings aren't always required. They need only be given once an individual is in 'custody' and subjected to 'interrogation.'"). Under 18 U.S.C. § 3501(e), a "confession" includes "any confession of guilt of any criminal offense or any self-incriminating statement made or given, orally or in writing."

Accordingly, to suppress a confession on the basis that it was involuntarily given, a defendant bears the burden of proving that his Fifth Amendment rights were infringed through "custodial interrogation" without Miranda warnings.[6] To show he was "in custody," a defendant must show by a preponderance of the evidence that his "freedom of action [was] curtailed in a significant way." Howes v. Fields, 565 U.S. 499, 518 (2012) (Ginsburg, J., concurring). Courts evaluating the "custody" issue ask whether, under the totality of the circumstances, a reasonable

---

[6] It is undisputed that the Probation Officers did not provide Mr. Egli with Miranda warnings.

5

person would not feel free to terminate the encounter and leave, taking into consideration the length and nature of the suspect's detention or encounter with law enforcement, and facts such as whether the suspect was at a police station during the encounter, whether the suspect was confronted by law enforcement with incriminating evidence, whether law enforcement used physical force or restraints, whether the police "dominated" the encounter, whether the suspect was told he could leave at any time, and whether the suspect was arrested at the interrogation's conclusion.  See United States v. Smith, 606 F.3d 1270, 1276 (10th Cir. 2010) (citing Smith v. Mullin, 379 F.3d 919, 934 (10th Cir. 2004); United States v. Minjares-Alvarez, 264 F.3d 980, 985 (10th Cir. 2001)); see also Guillen, 995 F.2d at 1109.  A defendant's statements are likewise only protected by the Miranda requirements if they were made in response to official interrogation, which is defined as the "express questioning" or its functional equivalent.  Rhode Island v. Innis, 446 U.S. 291, 300–01 (1980).  "Express questioning" includes "words or actions on the part of [law enforcement] . . . that [law enforcement] should know are reasonably likely to elicit an incriminating response from the subject." Id. at 301.

## ANALYSIS

The government argues that Mr. Egli's statements to his Probation Officers are admissible because Mr. Egli was not subject to custodial interrogation during the February 27, 2021 home visits.  (ECF No. 35 at 3–4.)  In other words, the government argues his statements were voluntary confessions of guilt.[7]  In contrast, Mr. Egli argues that he was subject to custodial interrogation because he was questioned by law enforcement officials—the two

---

[7] The court notes that the contents of Mr. Egli's alleged statements made on February 27, 2021, to his Probation Officers bear on the alleged violations of his supervised release conditions—his use of unauthorized file storage and internet-connected devices to watch adult pornography—rather than the government's charge for possession of child pornography.

Probation Officers—and felt he was required to respond to their questions due to his supervised release obligations.[8] (ECF No. 50 at 3–6.) The court has carefully examined the totality of the circumstances involved in the February 27, 2021 home visit and finds that Mr. Egli's statements, which he admits are inculpatory (see id. at 2), were voluntary and consequently admissible.

Mr. Egli argues that the statements he made to his Probation Officers were not "confessions" under 18 U.S.C. § 3501(e) and must therefore be deemed inadmissible out-of-court statements regardless of the question of voluntariness. (See ECF No. 50 at 4–5.) The court finds that Mr. Egli's statements to the Probation Officers plainly implicate him on the government's charge that he violated the terms of supervised release. He verbally confirmed his ownership of several of the unauthorized devices in his home and admitted that he had accessed the internet, including to view porn. Accordingly, his statements constitute a confession because they are self-incriminating and can be admitted so long as they are found voluntary.

Mr. Egli also maintains that his statements were involuntary because he was "in custody" during the Probation Officers' home visit by virtue of the fact that he was on supervised release and therefore obliged to tell the Probation Officers the truth. The Supreme Court has made clear that those on supervised release, although subject to a "number of restrictive conditions governing various aspects of [their] life[,]" are not de facto "'in custody' for purpose of receiving Miranda protection[,]" without more. Minnesota v. Murphy, 465 U.S. 420, 430 (1984). Rather, defendants seeking to suppress statements made to probation officers must still make a showing by the preponderance of the evidence that they were subject to either a "formal arrest or restraint

---

[8] More specifically, Mr. Egli claims that his statements were "probably misled and coerced through conversations with authorities" and should be suppressed because: 1) he "did [not] know the nature of the offense with which he was charged or of which he was suspected"; 2) he was not advised of his right to counsel or that any statements he made could be used against him; and 3) he was without the assistance of counsel. (ECF No. 50 at 5–6.)

7

on freedom of movement of the degree associated with a formal arrest" when their confession was made. Id.

Accordingly, the court turns to the specific circumstances of the Probation Officers' home visit to examine whether Mr. Egli was "in custody" or subject to restrictions on his freedom of movement of the "degree associated with a formal arrest." Id. Considering the totality of the circumstances, the court finds that Mr. Egli could have freely terminated his conversation with the Probation Officers during the February 27, 2021 home visit. Accordingly, Mr. Egli was not in custody and there was no Miranda violation.

As an initial matter, there is no evidence that Mr. Egli was threatened, coerced, or frightened through "physical mistreatment, use of violence, threats, promises, inducements, deceptions, or trickery," factors which are hallmarks of the typical Miranda violation. Guillen, 995 F.3d at 1105; see also United States v. Revels, 510 F.3d 1269, 1273 (10th Cir. 2007) (finding a home was dominated by police when officers knocked down defendant's front door, handcuffed her, and placed her face down on the floor). Rather, Mr. Brock described a cordial and consensual conversation with just a few questions posed by the Probation Officers. See United States v. Zar, 790 F.3d 1036, 1048 (10th Cir. 2015) (holding that there is no obligation for law enforcement to inform someone that an in-home interview is a "consensual conversation"). While the Probation Officers were armed, their weapons were concealed throughout their encounter. See United States v. Eckhart, 569 F.3d 1263, 1276 (10th Cir. 2009) (finding circumstances to be noncoercive when the defendant "was never handcuffed or placed in a police cruiser and no weapons were drawn" and "the officers were polite in their demeanor and did not use or threaten the use of force at any time"). Mr. Egli was not confined in any way by handcuffs or other forms of restraint—indeed, the evidence shows that he was free to roam

the house during the Probation Officers' search of his home and limited questioning.  Compare United States v. Lamy, 521 F.3d 1257, 1263 (10th Cir. 2008) (holding that an hour-long interview was not "custodial" when it was "conducted by two officers in a common area of [the defendant's] home"), with United States v. Cavazos, 668 F.3d 190, 194 (5th Cir. 2012) (holding that suspect was "in custody," despite being questioned at his home, because he was handcuffed, placed under constant surveillance, and subjected to a search of his home conducted by 12 officers).  There is no evidence that the search or questions were of a significant duration, and it is undisputed that Mr. Egli was not arrested until months later.  Most telling, one of Mr. Egli's statements was made after the Probation Officers left Mr. Egli's home, when Mr. Egli sent an unsolicited email to Mr. Brock further detailing his unauthorized internet use.

In sum, the court finds that Mr. Egli has not established that he was subject to custodial interrogation.  His self-implicating statements were voluntary and therefore admissible.

DATED this 31st day of October, 2024.

BY THE COURT:

_____
Tena Campbell
United States District Judge