IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>DANIEL DAVID EGLI,<br><br>        Defendant. | **ORDER AND MEMORANDUM DECISION DENYING MOTION TO APPOINT COUNSEL AND CONTINUE TRIAL**<br><br>Case No. 2:22-cr-00210-TC<br><br>Judge Tena Campbell |

On the second morning of a 4-day jury trial that began on October 28, 2024, Defendant Daniel David Egli made an oral motion for the appointment of counsel. (See Min. Entry, ECF No. 101.) He first requested that the court appoint a defense attorney from outside the Federal Public Defender office but later agreed to have his standby counsel, Robert Steele from the Federal Public Defender office, appointed as counsel—at least through the trial. (Id.) Mr. Steele stated that he would act in whichever role the court ordered but argued that it would be difficult to provide effective counsel without at least a week to prepare the case from the perspective of lead counsel. (Id.) The United States agreed to continue the trial so that Mr. Steele could be adequately prepared. (Id.) But the court denied Mr. Egli's request for the reasons set forth below.

A criminal defendant has a constitutional and a statutory right to waive his right to counsel and represent himself at trial. See Faretta v. California, 422 U.S. 806, 807 (1975) (holding that the Sixth Amendment right to counsel necessarily implies the right to proceed pro

1

se); see also 28 U.S.C. § 1654 (codifying the right of defendants in federal prosecutions to self-representation).  The right of self-representation, however, is not absolute.  The Tenth Circuit has held: "The right to make a knowing and intelligent waiver of the right to counsel does not grant the defendant license to play a cat and mouse game with the court …." United States v. Allen, 895 F.2d 1577, 1578 (10th Cir. 1990); see also United States v. Padilla, 819 F.2d 952, 959 (10th Cir. 1987) ("When faced with a situation of potential abuse, the district court may properly impose restraints on the right to reject counsel to prevent the right from being manipulated so as to obstruct the orderly procedure of the courts.").

On January 26, 2023, through his then-appointed counsel, Vanessa Ramos of the Federal Public Defender office, Mr. Egli elected to exercise this right and moved to represent himself. (ECF No. 22.)  Magistrate Judge Daphne A. Oberg conducted a hearing on that motion on February 7, 2023.  (See Min. Entry, ECF No. 23.)  In that hearing, Judge Oberg was clear with Mr. Egli that she believed it was a mistake to represent himself and forego the experience of a trained attorney:

> And I am going to be really frank with you here.  Representing yourself is a bad idea.  It's just not a smart thing to do.  The number of people who represent themselves who are able to make a positive difference in their own cases are—are slim to none. I mean it—it just doesn't happen, okay?

(Hr'g Tr., ECF No. 28 at 5.)

Judge Oberg explained that Mr. Egli's appointed counsel, unlike Mr. Egli, had a thorough knowledge of the rules of evidence, of criminal procedure, of how to issue a subpoena, of how to cross-examine a witness, of how to apply the sentencing guidelines, of how to object to questions, and of a multitude of other aspects of trial procedure and courtroom conduct.  (Id. at 6–8, 13–17.)  She summarized the difference between Mr. Egli's representation of himself and the representation provided by an experienced attorney as follows:

2

> Ms. Ramos would defend you much better than you could ever defend yourself. It's frankly unwise of you to represent yourself. I believe in the end you will regret it. You're not familiar with the rules, you're not familiar with court procedure. Ms. Ramos has expertise in all of those areas.

(Id. at 18.)

Judge Oberg reviewed the potentially long sentence Mr. Egli faced and noted that he did not understand all the elements of the crime for which he was charged. (Id. at 7–8, 18–19.) She emphasized that Mr. Egli did not have a legal background:

> As somebody who is not legally trained, who doesn't have the education, who doesn't have the experience, you're saying that you intend to completely subvert everything you're being told and that somehow that's going to work in your favor. Do you understand how that wouldn't make sense?

(Id. at 9.)

Nevertheless, and despite all these warnings, Mr. Egli responded:

> I understand your feelings, Your Honor, and I understand [your] concerns. My resolve is unchanged. This is something that I know people are going to look at and say either it is a long shot or there is no way it could work, but I have my belief. If it doesn't work out, I have no one to blame but myself.

(Id.)

Mr. Egli also responded intelligently to Judge Oberg's numerous questions and, on the basis of those responses, Judge Oberg found that Mr. Egli was making a knowing and voluntary waiver of his right to be represented by appointed counsel. She gave Mr. Egli a final caution:

> Mr. Egli, one other part of this you need to know, once you [choose to] represent yourself there is no going back. You don't get to go a week before trial and say, oh, never mind, never mind, I really want a lawyer. You are in it for the long haul.

(Id. at 20.)

3

The court finds that Judge Oberg properly advised Mr. Egli in exhaustive detail about the pitfalls of proceeding pro se. Indeed, Mr. Egli has not argued that his waiver of his Sixth Amendment was in any way defective. Instead, he simply wishes to change his mind.

The Tenth Circuit has held that a defendant's election to proceed pro se is not necessarily fixed:

> [A]n initial decision to proceed pro se does not automatically bind a defendant to self-representation for the entirety of the remaining proceedings. See Menefield v. Borg, 881 F.2d 696, 700 (9th Cir. 1989) ("We are certainly unwilling to deny counsel because of some conception that the defendant's initial decision to exercise his Faretta right and represent himself at trial is a choice cast in stone.").

United States v. Ontiveros, 550 F. App'x 620, 631 (10th Cir. 2013).

But the Tenth Circuit has also held that a district court may properly deny a request for substitution of counsel when that request is made after a trial has commenced. See United States v. Merchant, 992 F.2d 1091, 1095–96. In Merchant, a pro se defendant who "felt competent to represent himself at the time he made the request to proceed pro se" moved to withdraw as counsel and have the court reappoint counsel from the Federal Public Defender office, who was then acting as standby counsel, after the government had commenced its case and the defendant "no longer felt competent to represent himself." Id. at 1093–94. The Tenth Circuit ruled:

> Once a defendant exercises his constitutional right to defend himself and proceed pro se, he does not have the absolute right to thereafter withdraw his request for self representation and receive counsel. See, e.g., [United States v.] Willie, 941 F.2d [1384,] 1391 [(10th Cir. 1991)] ("Since he waived his right to counsel, he cannot now assert that the trial court erred in not replacing the attorney whose assistance he has waived.").

Id. at 1095.

Although the defendant in Merchant made his request after the jury had been sworn and the government had completed nearly two-thirds of its case, see id. at 1096, the Tenth Circuit cited favorably a ruling from the Seventh Circuit upholding a trial judge's decision to refuse a

4

continuance after the defendant asked the court on the first day of trial to let his standby counsel take over and conduct his defense:

> A criminal defendant has a constitutional right to defend himself; and with rights come responsibilities. If at the last minute he gets cold feet and wants a lawyer to defend him he runs the risk that the judge will hold him to his original decision to avoid the disruption of the court's schedule that a continuance granted on the very day that trial is scheduled to begin is bound to cause.

United States v. Solina, 733 F.2d 1208, 1211–12 (7th Cir. 1984), cert denied, 469 U.S. 1039 (1984). And indeed, the Tenth Circuit did not require that the jury be sworn or the government to begin its case for a request for counsel to be untimely: "It is well within the discretion of the court to deny as untimely requests for counsel made after meaningful trial proceedings have begun." Id. (quoting United States v. Tolliver, 937 F.2d 1183, 1187 (7th Cir. 1991)); see also United States v. Proctor, 166 F.3d 396 (1st Cir. 1999) ("It … is within the district court's discretion to refuse a defendant's request to withdraw from self-representation after a valid waiver if a defendant seeks counsel in an apparent effort to delay or disrupt proceedings on the eve of trial, or once trial is well underway."); United States v. Taylor, 933 F.2d 307, 311 (5th Cir. 1991) ("A defendant is not entitled to 'choreograph special appearances by counsel,' McKaskle v. Wiggins, 465 U.S. 168, 183 (1984) …, or repeatedly to alternate his position on counsel in order to delay his trial or otherwise obstruct the orderly administration of justice.").

When reviewing a request for the substitution of counsel, the Tenth Circuit instructs the court to consider "the degree to which a defendant has shown good cause and the timeliness of the request." Merchant, 992 F.2d at 1095 (citation omitted). Here, Mr. Egli has failed to show good cause, and his request—which was made on the second day of trial, after the court had empaneled a jury—is untimely. Although Mr. Egli maintained that he did not have the legal training necessary to conduct his trial, that argument is an unpersuasive reason to appoint

counsel after trial has begun, especially given Judge Oberg's extensive but unheeded warnings that Mr. Egli did not have the necessary legal background to represent himself at trial and would likely regret his decision when trial arrived.

In any event, based on the circumstances of this case, the court finds that Mr. Egli made his motion primarily for the purpose of delay. In response to three other last-minute motions, the court issued an order on the first day of trial detailing the lengthy history of these proceedings. (Order dated Oct. 28, 2024,[1] ECF No. 99 at 2–7.) In that order, the court noted that Mr. Egli has been incarcerated for the conduct that is the basis of this trial for over three years, since May 17, 2021, and has been charged under an indictment for over two years, since June 8, 2022. (Id. at 8.) The court also summarized the multiple continuances and extensions on briefing deadlines that the court granted before ruling on three motions in limine filed by the United States in preparation for a trial that was then set for September 23, 2024.[2] (Id. at 2–7; Order dated July 3, 2024, ECF No. 60.)

Since that time, Mr. Egli has filed the following motions and appeals: an appeal to the Tenth Circuit filed on July 22, 2024 (see Not. Appeal, ECF No. 65), which was dismissed for lack of prosecution, United States v. Egli, No. 24-4080 (10th Cir. Aug. 22, 2024); a motion to dismiss the indictment filed on August 20, 2024 (ECF No. 71); a motion to continue the trial date filed on August 27, 2024 (ECF No. 74); a second appeal to the Tenth Circuit filed on September 3, 2024 (see Not. Appeal, ECF No. 78), which was dismissed for lack of jurisdiction,

---

[1] Because the court was in jury selection all day, that order was docketed on the morning of October 29, 2024. (See ECF No. 99.)

[2] The court had previously continued the trial date five times. (See Order dated Aug. 29, 2022, ECF No. 17; Order dated Feb. 10, 2023, ECF No. 26; Order dated Apr. 26, 2023, ECF No. 34; Order dated August 23, 2023, ECF No. 42; Order dated Mar. 4, 2024, ECF No. 48; Order dated Apr. 25, 2024, ECF No. 57.)

United States v. Egli, No. 24-4090 (10th Cir. Sept. 26, 2024); a motion to continue the trial date filed on September 19, 2024 (ECF No. 82); an oral motion to continue the trial date at a pretrial conference on October 1, 2024 (see Min. Entry, ECF No. 86); a motion for discovery filed on October 16, 2024 (ECF No. 90); a motion to continue the trial and for discovery filed on October 21, 2024 (ECF NO. 94); a motion to disqualify the judge or seek recusal filed on October 25, 2024 (ECF No. 97); and now an oral motion to appoint counsel (see Min. Entry, ECF No. 101).

These motions were repetitive, mostly reiterating Mr. Egli's arguments that the government had not provided him discovery materials and that he did not have access to appropriate legal materials to prepare. As the court has ruled previously:

> Each time that Mr. Egli has asked for a continuance of the trial date or of other briefing deadlines, he has alleged that he has been prevented from accessing necessary legal resources and that he has not timely received the government's documents. This court finds this argument unpersuasive. Mr. Egli has been able to file multiple civil cases in this court (see Egli v. Fojtik, Case No. 2:22-cv-102, which was dismissed by the Honorable Howard C. Nielson, and Egli v. USDC District of Utah, No. 2:23-cv-551, which was dismissed by the Honorable Robert J. Shelby), an appeal to the Tenth Circuit (see United States v. Egli, No. 24-4080), and now a 16-page motion to dismiss containing multiple legal citations (see ECF No. 71). Mr. Egli has never specified what materials he believes he is missing— or why he as not contacted his stand-by counsel for help.
>
> The court contacted the Davis County Jail to assure itself that Mr. Egli had access to legal documents. The jail explained that, while Mr. Egli's files do specify that he represents himself in his criminal matter, the jail does not maintain separate procedures for inmates who are represented by counsel and those who represent themselves—both follow the standard jail protocols for access to legal and other kinds of mail. The jail was unaware of any requests made by Mr. Egli for legal materials that had been denied. At most, the jail believed that Mr. Egli was frustrated that he was not permitted access to a laptop—even though he was allowed to access a tablet (which Mr. Egli confirmed at the hearing on August 29, 2024), which is linked to caselaw and other legal resources. Given his past history and the current charges against him, the court finds nothing unreasonable about the jail's protocols and nothing unequal about the way Mr. Egli has been treated. The jail also confirmed that Assistant United States Attorney Allison Hart

> Behrens has previously hand-delivered the government's discovery papers and briefing to ensure that Mr. Egli has access to those documents.

(Order dated Aug. 30, 2024, ECF No. 77 at 3-4.)

The quantity of filings suggest that Mr. Egli filed his motions and appeals primarily for the purpose of delay and obstruction. Indeed, Mr. Egli successfully moved his trial from September 23, 2024, to October 28, 2024, as this court was unwilling to interfere with the Tenth Circuit's briefing schedule on an interlocutory appeal, even though the court believed—and the Tenth Circuit later agreed—that the Tenth Circuit did not have jurisdiction to hear such an appeal.

Mr. Egli's previous requests to this court are inconsistent and he has demonstrated a willingness to mischaracterize the record. At a hearing on August 29, 2024, Mr. Egli asked the court to proceed with a bench trial. (See Min. Entry, ECF No. 76.) But at a hearing on October 1, 2024, Mr. Egli insisted that he wanted a jury trial. (See Min. Entry, ECF No. 86.) The court granted his request for a jury trial. (See id.) Nevertheless, in a motion to disqualify the judge filed on the eve of trial, Mr. Egli suggested that the court was trying to "railroad" him to trial,[3] and characterized the requested bench trial as "tantamount to a lynching, when a jury trial was demanded." (Mot. Disqualify, ECF No. 97 at 6.) The court fears that, if the court granted his request for the appointment of counsel, Mr. Egli would simply move to withdraw Mr. Steele as his appointed counsel after the court dismissed the jury. Mr. Egli has already suggested that he would prefer counsel who is not from the Federal Public Defender office.

Mr. Egli has shown no reason why he could not have requested counsel earlier. Recognizing the difficulties of preparing a defense while incarcerated, the court allowed Mr. Egli

---

[3] Mr. Egli has elsewhere argued that "his excessive pretrial incarceration" violates the right to a speedy trial guaranteed by the Sixth Amendment. (See Mot. Dismiss, ECF No. 71 at 12.)

8

to ask for appointment of counsel by July 24, 2024, if he no longer wished to represent himself. (ECF No. 60 at 13.) But instead of meeting that deadline, Mr. Egli appealed the court's ruling on the government's motions in limine to the Tenth Circuit. Mr. Egli continued to insist that he wished to represent himself as late as October 23, 2024, at a hearing on one of Mr. Egli's multiple motions to continue, at which the court heard from both Mr. Egli and Mr. Steele about whether Mr. Egli was competent to proceed. (See Min. Entry, ECF No. 95.) And on the first day of trial, when Mr. Egli asked the judge to recuse herself, he made no motion for the appointment of counsel. (See Min. Entry, ECF No. 100.)

Empaneling a jury is no easy feat—either for the court, or for the jurors. During voir dire, the court asked the members of the panel to elaborate on answers they provided to a juror questionnaire about whether they or family members had been the victims of sexual abuse or had ever been accused of sexual abuse. For three hours, nearly half the panel members privately[4] explained to the court that they had been molested as children, that their partners had been raped by brothers and fathers, that their children had been accused of sexual assault, and that their family members had been assaulted at gunpoint. While difficult, this process is necessary to ensure that the empaneled jury can be fair and impartial. But the court does not lightly ask potential jurors to undergo this ordeal. And although the parties suggested that the same jury could be asked to return in a few weeks after Mr. Steele had time to prepare, this proposal is not feasible. A continuance of the trial would necessarily require a new jury, and a new panel of 75 potential jurors would be asked to undergo the same selection process.

---

[4] The word "private" is somewhat misleading here. Although the court conducted this questioning in the jury room, outside the presence of other jury panel members, the following individuals were present: the judge, three members of her staff, the court reporter, Mr. Egli, Mr. Steele, Ms. Behrens, and FBI Special Agent Jeff Ross. The potential jurors were therefore asked, under oath, to provide truthful details about traumatic parts of their lives to nine strangers.

It would set a troubling precedent for the court to grant Mr. Egli's request for new counsel at this stage of the trial proceedings, after a jury has already been empaneled. Such a decision would provide a template for other defendants who wished to delay trial—potentially because they were unsatisfied with the final composition of the jury panel and wanted another shot at jury selection. The court cannot condone these practices.

Finally, the court notes that Mr. Egli showed himself capable of asking intelligent and helpful questions during the voir dire process. The court observed no breakdown in the relationship between Mr. Egli and Mr. Steele, and Mr. Egli appeared to understand and respect the advice given by Mr. Steele. Although self-representation is difficult, Mr. Egli has demonstrated that he is able to defend himself and to communicate his arguments effectively.

## ORDER

For the reasons stated above, the court DENIES Mr. Egli's request to appoint Robert Steele as counsel. The trial will continue with Mr. Steele as standby counsel.

DATED this 31st day of October, 2024.

BY THE COURT:

_____
Tena Campbell
United States District Judge